IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | CHAPTER: | 11 |
| ANGELIA NICHOLE SHOCKLEY. | ) | CASE NO.: | 19-00138 |
|    Debtor. | ) | JUDGE: | HARRISON |
| | ) | | |
| JASON BRUBACHER, with derivative | ) | | |
| standing on behalf of the bankruptcy estate, | ) | ADV. PROC. | 2:20-ap-90020 |
| | ) | | |
|    Plaintiff, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| AMERICAN BANK & TRUST OF THE | ) | | |
| CUMBERLANDS | ) | | |
| | ) | | |
|    Defendant. | ) | | |

## JOINT PRETRIAL STATEMENT

Pursuant to the Preliminary Pretrial Order entered by the Court on February 13, 2020, the Plaintiff, Jason Brubacher, with derivative standing behalf of the bankruptcy estate ("**Plaintiff**"), by and through undersigned counsel, and Defendant, American Bank & Trust of the Cumberlands ("**ABT**"), by and through its undersigned counsel, respectfully submit the following Joint Pretrial Statement:

### PLAINTIFF

1. **Brief statement of each claim or cause of action:**

The causes of action in this adversary seek avoidance of the lien of ABT on certain real property owned by the Debtor's bankruptcy estate, or, alternatively, a monetary judgment against ABT, as a mediate transferee of a fraudulent transfer equal to the value of the property so transferred, and for related relief. The statutory bases for the causes of action are found in 11 U.S.C. §§ 542, 544, 548 and 550, as well as supplement state grounds of Tenn. Code Ann. §§ 66-3-305, 66-3-306, and 66-3-308.

2. **Brief summary of plaintiff's contentions of fact in support of each claim or cause of action and the evidence to be relied upon to establish those facts:**

As more fully detailed in the Complaint[1], the Plaintiff contends that Jason Brubacher was married to Angelia Shockley (the Debtor in the underlying bankruptcy case) and was also formerly

---

[1] The Plaintiffs' detailed facts are laid out in Paragraphs 6 – 53 of the Complaint, and those not admitted in ABT's Answer are also listed in the Contested Facts section herein.

business partners with Ms. Shockley until their divorce in May, 2016. As part of the divorce, Jason Brubacher was awarded payment in the amount of $500,000 from Ms. Shockley, to be paid in installments, in exchange for Ms. Shockley receiving Mr. Brubacher's interest in their company, Lyfe Tea, LLC. Additionally, Ms. Shockley was ordered to pay the tax liabilities for her and Mr. Brubacher's jointly filed 2015 federal tax return—an amount in excess of $300,000.00—and Ms. Shockley was awarded the real property at 2088 Buffalo Valley Road, Cookeville, Tennessee 38501 (the "Real Property"), which is at the center of this adversary case, free and clear of any liens or encumbrances.

Subsequent to the divorce, and with the significant outstanding debts owing to Mr. Brubacher and the Internal Revenue service, among others, Ms. Shockley transferred the Real Property—still free of liens or encumbrances—via warranty deed to her then-fiance' Randal Risher ("**Mr. Risher**") for nominal consideration ($10.00 or less) on August 16, 2018.

On November 28, 2018, approximately three months after Mr. Risher acquired the Real Property from his insolvent girlfriend, Ms. Shockley, for no consideration, Mr. Risher obtained a loan from ABT in the amount of $175,000.00 secured by the Real Property through a deed of trust executed by Mr. Risher in favor of ABT.

Based on the plain language of the warranty deed, ABT had actual, constructive, and/or inquiry notice that the transfer of the Real Property from Ms. Shockley to Mr. Risher, which occurred approximately three months before ABT received an interest in the Real Property by and through the deed of trust, was for no consideration

The Plaintiff contends that ABT conducted no due diligence or other investigation to determine (a) the solvency of Ms. Shockley at the time she executed the warranty deed, or (b) the voidability of the transfer of the Real Property from Ms. Shockley to Mr. Risher at the time it received its lien interest in the Real Property.

Ms. Shockley filed a Chapter 11 petition on January 10, 2019, at which time she still owed over $500,000 to the Internal Revenue Service and over $300,0000 to Mr. Brubacher—the same significant debts that predated the transfer of the Real Property to Mr. Risher.

The Plaintiff has recovered the Real Property from the initial transferee, Mr. Risher, by Order of this Court on January 24, 2020, which, among other things, divested title of the Real Property from Mr. Risher and in the name of Ms. Shockley for purposes of administration of the Real Property for the benefit of Ms. Shockley's bankruptcy estate.

The Plaintiff contends that the ABT's lien interest in the Real Property it acquired from Mr. Risher is avoidable as ABT is a mediate transferee extending from the already determined fraudulent transfer from the debtor to Mr. Risher.

Further, the Plaintiff contends that under the circumstances ABT had a duty to conduct due diligence or reasonable investigation of how Mr. Risher came into ownership of the Real Property, the solvency of Ms. Shockley at the time she executed the warranty deed, or the voidability of the transfer of the Real Property from Ms. Shockley to Mr. Risher at the time ABT received its lien interest in the Real Property.

The evidence the Plaintiff intends to rely upon to establish these facts include: (i) public documents of record; (ii) the debtor's sworn testimony at the meeting of creditors; (iii) witness testimony of ABT representatives; (iv) witness testimony of Jason Brubacher; (v) potential expert testimony as to the standard of care and due diligence in the mortgage industry; and (vi) other documents and information as developed through discovery.

## DEFENDANT

1. **Brief statement of each defense:**

   a) The Complaint fails to state a claim upon which relief can be granted
   b) ABT is a good faith transferee and took the transfer without knowledge of its voidability.
   c) ABT is a bona fide purchaser for value.

2. **Brief summary of defendant's contentions of fact in support of each defense and the evidence to be relied upon to establish those facts:**

As stated by the Plaintiff, ABT loaned $175,000.00 to Randal Risher on November 28, 2018. (the "Loan"). To secure repayment of the Loan, Mr. Risher conveyed the property located at 2088 Buffalo Valley Road, Cookeville, TN 38501 (the "Property") via deed of trust in favor of ABT. As part of the loan application and underwriting process, ABT had no knowledge of anything that would place it on notice that the transfer of the Property from Ms. Shockley to Mr. Risher was illegitimate and voidable.

Based on the allegations in the Complaint, the Plaintiff contends that ABT should have had this knowledge based on inquiry notice from the language in the warranty deed from Ms. Shockley to Mr. Risher indicating that no consideration was exchanged. However, ABT contends that there is no duty in Tennessee title practice that would require it to inquire further into the legitimacy of a transaction just because the face of the deed shows that no consideration was exchanged. There are several legitimate reasons why a deed may show no consideration exchanged. In fact, the quitclaim deed from Mr. Brubacher to Ms. Shockley (recorded in Record Book 1039, Page 22, Register's Office of Putnam County, TN) states that it was for zero consideration. Moreover, inquiry notice alone is not, by itself, sufficient in the Sixth Circuit to show that ABT had knowledge of voidability. "What a reasonable person would be alerted to depends not just on whether there was inquiry notice, but also on what investigative avenues existed, whether a reasonable person would have undertaken those avenues given the situation, and what findings the reasonable investigations would have yielded." *Meoli v. The Huntington Nat'l Bank*, 848 F.3d 716, 733 (6th Cir. 2017).

The evidence that ABT intends to rely upon to prove its defenses is: (1) documents obtained by ABT as part of the loan application and underwriting process; (2) quitclaim deed from Mr. Brubacher to Ms. Shockley (recorded in Record Book 1039, Page 22, Register's Office of Putnam County, TN); (3) recorded divorce decree in the case of *Brubacher v. Shockley*, recorded in on June 17, 2019, in Record Book 1127, Page 22, Register's Office of Putnam County, TN.

**INTERVENORS, THIRD-PARTY PLAINTIFFS, (DEFENDANTS), ETC.**

1. At this time, there have been no appearances by intervenors, third-party plaintiffs, or third-party defendants to this suit, and the undersigned do not foresee appearances by any additional parties as litigants.

**ALL PARTIES**

1. **Statement of all admitted or uncontested facts:**

   (a) Mr. Brubacher executed a Quitclaim Deed to Ms. Shockley regarding the Real Property.

   (b) On or about August 16, 2018, Ms. Shockley executed a Warranty Deed conveying her interest in the Real Property to Mr. Risher.

   (c) The face of the Warranty Deed from Ms. Shockley to Mr. Risher indicates Ms. Shockley received $10.00 as consideration for the transfer and, in the notary section of the deed, further states that the "*actual consideration or value, whichever is greater, for this transfer is $0.*"

   (d) On November 28, 2018, approximately three months after Mr. Risher acquired the Real Property from his insolvent girlfriend, Ms. Shockley, Mr. Risher obtained a loan from ABT pursuant to that certain *Consumer Real Estate Secured Balloon Note* in the original principal amount of $175,000.00 (the "Note"). [Claim No. 5]. The Note was secured on the Real Property through that certain *Deed of Trust* (the "Deed of Trust") executed by Mr. Risher in favor of ABT. [*Id.*].

   (e) Following execution of the Note and recording of the Deed of Trust, ABT advanced the full amount of the Note to Mr. Risher. As of the date of the Complaint the balance of the Note was $179,667.56.

   (f) ABT conducted no due diligence or other investigation to determine (a) the solvency of Ms. Shockley at the time she executed the Warranty Deed, or (b) the voidability of the transfer of the Real Property from Ms. Shockley to Mr. Risher at the time it received its lien interest in the Real Property.

   (g) Ms. Shockley, individually (and also on behalf of Lyfe Tea, LLC), engaged bankruptcy counsel and authorized the filing of the underlying Chapter 11 bankruptcy case on January 10, 2019.

   (h) Within the statements and schedules to the Petition, Ms. Shockley scheduled outstanding debts to Mr. Brubacher in excess of $300,000 and the Internal Revenue Service in excess of $400,000.00. [Bankr. Docket No. 1].

   (i) The Internal Revenue Service filed a Proof of Claim in the amount of $540,640.81. [Claim No. 2].

   (j) On June 6, 2019, Mr. Brubacher, on behalf of Ms. Shockley's bankruptcy estate pursuant to that certain *Order Granting Motion for Derivative Standing to Pursue Avoidance Actions*

(Bankr. Docket No. 25) (the "Derivative Standing Order"), filed an adversary proceeding against Ms. Shockley and Mr. Risher, Case No. 2:19-bk-00138 (the "Risher Adversary Proceeding") seeking an order avoiding the transfer of the Real Property from Ms. Shockley to Mr. Risher pursuant to 11 U.S.C. §§ 542, 544, 548, and 550 and Tenn. Code Ann. §§ 66-3-305, 306, and 308.

(k) On January 24, 2020, this Court entered the *Order Granting Default Judgment Against Angelia Nichole Shockley and Randal Risher* (Risher Adv. Docket No. 23) (the "Risher Order"), which, among other things, divested title of the Real Property from Mr. Risher and in the name of Ms. Shockley for purposes of administration of the Real Property for the benefit of Ms. Shockley's bankruptcy estate.

(l) The Real Property transfer occurred on or about August 26, 2018; and, therefore, within two (2) years of the Petition Date.

(m) The face of the Warranty Deed indicates Ms. Shockley received either $10 or no consideration for the transfer.

## 2. Statement of contested facts:

(a) Years prior to the date of filing of this bankruptcy case, Mr. Brubacher and the Debtor, Angelia Nichole Shockley ("Ms. Shockley") were married and were also business partners in multiple companies, including Lyfe Tea, LLC. Mr. Brubacher and Ms. Shockley divorced in May 2016. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(b) As part of the divorce, Ms. Shockley was obligated and ordered to, *inter alia*: (i) pay the parties' joint federal income tax liability for tax year ending December 31, 2015; and (ii) with specific reference to a separate agreement concerning the division of business ownership interests, pay Mr. Brubacher $500,000.00 over sixty (60) months[2] as compensation and consideration for his interest in Lyfe Tea. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(c) As part of the divorce, and in consideration of the obligations she acquired, including but not limited to those obligations addressed above, Ms. Shockley was awarded, *inter alia*: (i) ownership of 2088 Buffalo Valley Road, Cookeville, Tennessee 38501 (the "Real Property"); and (ii) ownership in Lyfe Tea. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(d) Mr. Brubacher's execution of a Quitclaim Deed to Ms. Shockley regarding the Real Property was in conjunction with a divorce. At such time, Ms. Shockley became the sole owner of the Real Property, in fee simple absolute. [Plaintiffs' assertion; denied by Defendant as without knowledge]

---

[2] The terms of the agreement incorporated into the divorce are: $500,000 with 6% annual interest accruing as of January 1, 2017, to be paid at $9,666.40 per month for 60 months beginning February 1, 2017 and the 1st day of each month thereafter until paid in full.

(e) On or about May 1, 2017, Ms. Shockley listed the Real Property for sale at a price of $414,929.00. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(f) On or about May 15, 2017, Ms. Shockley removed, or caused to be removed, the sales listing for the Real Property. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(g) At the time Ms. Shockley had the Real Property listed for sale, it had no mortgages and no encumbrances. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(h) Mr. Risher was Ms. Shockley's boyfriend on August 16, 2018 when Ms. Shockley executed a Warranty Deed conveying her interest in the Real Property to Mr. Risher. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(i) At the time Ms. Shockley transferred the Real Property, the Real Property had a value in excess of $400,000.00 and was not encumbered by any liens. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(j) At the time Ms. Shockley transferred the Real Property, she owed the Plaintiff in excess of $300,000.00, and she further owed the Internal Revenue Service in excess of $300,000.00. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(k) Ms. Shockley has testified that, even after the she transferred the Real Property, she continued to reside in the Real Property. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(l) Other than the approximate two (2) weeks the Real Property was listed on the market through Skender-Newton Realty, the transfer of the Real Property was not marketed to any party other than the transferee, Mr. Risher. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(m) The November 28, 2018, Mr. Risher acquired the Real Property for no consideration [Plaintiffs' assertion; denied by Defendant as without knowledge]

(n) Upon information and belief, upon receiving these funds, Mr. Risher and Ms. Shockley promptly spent the funds while both were insolvent. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(o) Based on the plain language of the Warranty Deed, ABT had actual, constructive, and/or inquiry notice that the transfer of the Real Property from Ms. Shockley to Mr. Risher, which occurred approximately three months before ABT received an interest in the Real Property by and through the Deed of Trust, was for no consideration. [Plaintiffs' assertion; denied by Defendant]

(p) The Internal Revenue Service's filed a Proof of Claim in the amount of $540,640.81 contains an amount of $375,119.72 attributable to priority tax debt due for tax period ending December 31, 2015. [Claim No. 2]. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(q) The tax attributable to tax year 2015 is the same obligation addressed in the divorce, and for which Ms. Shockley is required to pay as ordered therein. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(r) The hundreds of thousands of dollars owed to both Mr. Brubacher and to the Internal Revenue Service predated the transfer of the Real Property to Mr. Risher. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(s) Ms. Shockley was acutely aware of the obligations to both Mr. Brubacher and to the Internal Revenue Service as the time of the Real Property transfer to Mr. Risher. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(t) Ms. Shockley transferred an interest in her property (namely, the Real Property) to Mr. Risher without payment to her then existing creditors. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(u) Ms. Shockley received less than a reasonably equivalent value from Mr. Risher in exchange for the transfer of the Real Property. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(v) Ms. Shockley's fraudulent intent is evidenced by the typical "badges of fraud" including, but not limited to, (i) the transferee being her fiancé; (ii) Ms. Shockley retaining possession of the transferred asset; (iii) Ms. Shockley owed hundreds of thousands of dollars in delinquent obligations at the time of the transfer- namely, unpaid taxes to the IRS; (iv) the transfer was of Ms. Shockley's primary and most valuable asset; and (v) the amount of the proceeds from the transfer was unreasonably small in relation to the value of the asset transferred. [Plaintiffs' assertion; denied by Defendant as without knowledge].

(w) Ms. Shockley was insolvent at the time of the Real Property transfer or became insolvent as a result of the transfer. This is evidenced by, *inter alia*, the debt to Mr. Brubacher – acknowledged by Ms. Shockley to be an undisputed amount of at least $325,000 – not being paid at the time of the transfer and the remaining assets of Ms. Shockley post-transfer, being insufficient to pay her outstanding debts. [*See* Bankr. Docket No. 1]. This is further evidenced by Ms. Shockley having not paid her federal tax obligations corresponding to tax year ending December 31, 2015. [Plaintiffs' assertion; denied by Defendant as without knowledge].

(x) As of the date of entry of the Risher Order, the Real Property remains encumbered by ABT's Deed of Trust. [Plaintiffs' assertion; denied by Defendant as without knowledge]

(y) Based on the plain language of the Warranty Deed and as further set forth herein, ABT had either actual, constructive, or inquiry notice of the voidability of the transfer of the Real Property from Ms. Shockley to Mr. Risher when it received the Deed of Trust on the Real Property and otherwise did not accept such transfer in good faith. [Plaintiffs' assertion; denied by Defendant as without knowledge]

3. **Statement of contested legal issues:**

(I) Whether the ABT's acquisition of ABT's lien interest in the Real Property constitutes a transfer of property that is avoidable under 11 U.S.C. §§ 544 or 548, and or Tenn. Code Ann. § 66-3-308, and, therefore, recoverable by the bankruptcy estate pursuant to 11 U.S.C. § 550 and/o Tenn. Code Ann. § 66-3-309(b)?

   a. Whether, under the applicable legal standard, ABT is a good faith transferee and took the transfer without knowledge of its voidability.

   b. Whether, under the circumstances, ABT had a duty to conduct any due diligence or other investigation to determine (a) the solvency of Ms. Shockley at the time she executed the Warranty Deed, or (b) the voidability of the transfer of the Real Property from Ms. Shockley to Mr. Risher at the time it received its lien interest in the Real Property.

   c. Whether, based on the plain language of the Warranty Deed and other circumstances, ABT had either actual, constructive, or inquiry notice of the voidability of the transfer of the Real Property from Ms. Shockley to Mr. Risher when it received the Deed of Trust on the Real Property

   d. Whether ABT qualifies as a bona fide purchaser for value, in good faith and without knowledge, such that it would not be liable as a mediate transferee?

Respectfully submitted,

*/s/ Gray Waldron*
HENRY E. ("Ned") HILDEBRAND, IV
GRAY WALDRON
DUNHAM HILDEBRAND, PLLC
2416 21st Avenue South, Suite 303
Nashville, TN 37212
629.777.6519
gray@dhnashville.com
*Counsel for Plaintiff*

*/s/ Bret J. Chaness*
BRET J. CHANESS (BPR # 31643)
RUBIN LUBLIN, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, Georgia 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rubinlublin.com
*Attorney for American Bank & Trust of the Cumberlands*